### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHEN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| DENNIS HIGGINBOTHAM, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) |
| BAXTER INTERNATIONAL, INC., ROBERT PARKINSON, JR., HARRY M. JANSEN KRAEMER, JR., BRAIN P. ANDERSON, AND JOHN GREISCH | ) ) ) ) |
| Defendants. | ) ) ) |

**DOCKETED**

JUL 2 8 2004 **JUDGE HART**

**04C 4909**

**MAGISTRATE JUDGE BOBRICK**

***JURY TRIAL DEMANDED***

## CLASS ACTION COMPLAINT

Plaintiff, Dennis Higginbotham ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Baxter International, Inc. ("Baxter" or the "Company") securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.



## NATURE OF THE ACTION

1.     This is a federal class action on behalf of purchasers of the securities of Baxter between April 19, 2001 and July 21, 2004, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

4.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b). Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this Judicial District. Additionally, the Company maintains a principal executive office in this Judicial District.

5.     In connection with the acts, conduct and other wrongs alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

### *Plaintiff*

6.     Dennis Higginbotham, as set forth in the accompanying certification, incorporated by reference herein, purchased Baxter securities at artificially inflated prices during the Class Period and has been damaged thereby.

### *Defendants*

7.     Baxter is a Delaware corporation with its principal executive offices located at One Baxter Parkway, Deerfield, Illinois 60015.

8.     Harry M. Jansen Kraemer, Jr. ("Kraemer") was, until he resigned on January 26, 2004, the Company's Chairman and Chief Executive Officer.

9.     Brian P. Anderson ("Anderson") was, until June 21, 2004, the Company's Senior Vice President and Chief Financial Officer.

10.     Robert L. Parkinson, Jr. ("Parkinson") is Chairman and Chief Executive Officer of Baxter and has held said position since April 2004.

11.     John J. Greisch ("Greisch") is the Corporate Vice President of Baxter International Inc. and President of Baxter's BioScience business. Additionally, defendant Greisch serves as the Company's Chief Financial Officier.

12.     Kraemer, Anderson, Parkinson, and Greisch are collectively referred to hereinafter as the "Individual Defendants." During the Class Period, each of the Individual Defendants, as senior executive officers and/or directors of Baxter were privy to non-public information concerning its business, finances, products, markets and present and future business prospects via access to internal corporate documents, conversations and connections with other corporate officers and

employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

13.     Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects     via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

14.     It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the above officers of Baxter, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein. Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and

-4-

misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

15.     As officers and controlling persons of a publicly-held company whose securities were, and are, registered with the SEC pursuant to the Exchange Act, and was traded on the New York Stock Exchange ("NYSE") and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

16.     The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with Baxter, each of the Individual Defendants had access to the adverse undisclosed information about Baxter financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about Baxter and its business issued or adopted by the Company materially false and misleading.

17. The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

18. Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Baxter securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Baxter business, operations, management and the intrinsic value of Baxter securities; and (ii) caused Plaintiff and other members of the Class to purchase Baxter securities at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

19. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the securities of Baxter between April 19, 2001 and July 21, 2004, inclusive (the "Class Period") and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

20.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Baxter's securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Baxter or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

21.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

22.     Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

23.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

        (a)  whether the federal securities laws were violated by defendants' acts as alleged herein;

        (b)  whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Baxter; and

        (c)  to what extent the members of the Class have sustained damages and the proper measure of damages.

24.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action

## SUBSTANTIVE ALLEGATIONS

### Background

25.     Baxter operates as a global medical products and services company with expertise in medical devices, pharmaceuticals and biotechnology to assist healthcare professionals and their patients with the treatment of complex medical conditions, including hemophilia, immune disorders, infectious diseases, cancer, kidney disease, trauma and other conditions. The Company's continuing operations consist of three segments: Medication Delivery, which provides a range of intravenous solutions and specialty products that are used in combination for fluid replenishment, general anesthesia, nutrition therapy, pain management, antibiotic therapy and chemotherapy; BioScience, which develops biopharmaceuticals, biosurgery products, vaccines and blood collection, processing and storage products and technologies for transfusion therapies, and Renal, which develops products and provides services to treat end-stage kidney disease.

### Materially False And Misleading
### Statements Issued During The Class Period

26.     The Class Period commences on April 19, 2001. At that time, Baxter announced its financial results for the first quarter of 2001. The Company stated that it continued its sales and earnings growth momentum in the first quarter. Net earnings for the quarter grew 12 percent to $214

-8-

million, while earnings per diluted share grew 9 percent to $0.71. This compared to the $191 million, or $0.65 per diluted share, that Baxter reported for the same period last year. Net earnings for the first quarter of 2001 excluded the one-time, non-cash impact of adopting new accounting rules. Commenting on the results, defendant Kraemer stated:

> "We continued our very strong sales and earnings momentum with first quarter performance consistent with our expectations[.]...I expect Baxter to continue to accelerate our sales and earnings growth through enhancements to our product pipeline, increased production capacity, continued improvements in operational efficiency, and global expansion."

27.     On May 15, 2001, Baxter filed its quarterly report with the SEC on Form 10-Q. The Company's Form 10-Q was signed by defendant Andersen and reinforced the previously announced financial results. Additionally and with respect to the presentation of the Company's financial results, Baxter stated:

> In the opinion of management, the interim condensed consolidated financial statements reflect all adjustments necessary for a fair presentation of the interim periods. All such adjustments are of a normal, recurring nature. The results of operations for the interim period are not necessarily indicative of the results of operations to be expected for the full year.

28.     On July 19, 2001, Baxter announced financial results for the second quarter of 2001. The Company posted healthy gains in sales and earnings for the second quarter of 2001. Baxter reported a 15 percent increase in sales before the impact of foreign exchange, or 10 percent after the impact of foreign exchange. Sales totaled $1.87 billion in the second quarter, which compared to the $1.69 billion reported last year. Domestic sales grew 23 percent in the quarter, while international sales were flat (or up 9 percent before the impact of foreign exchange). Earnings grew 13 percent in the quarter to $253 million, up from the $223 million reported for the same period last

year. Earnings per diluted share increased 11 percent to $0.42. This compared to the $0.38 per diluted share reported in the second quarter last year. Commenting on these results, defendant Kraemer stated:

> "We continued our strong momentum in the second quarter, delivering excellent sales and earnings growth[.]...Baxter BioScience experienced exceptional growth in the quarter. The investments we are making to expand our bioscience manufacturing capacity are enabling us to provide more products to patients who rely on these vital therapies."

29.     On August 9, 2001, Baxter filed its quarterly report with the SEC on Form 10-Q. The Company's Form 10-Q was signed by defendant Andersen and reinforced the previously announced financial results. Additionally and with respect to the presentation of the Company's financial results, Baxter stated:

> In the opinion of management, the interim condensed consolidated financial statements reflect all adjustments necessary for a fair presentation of the interim periods. All such adjustments are of a normal, recurring nature. The results of operations for the interim period are not necessarily indicative of the results of operations to be expected for the full year.

30.     On October 18, 2001, Baxter announced financial results for the third quarter of 2001. Baxter's sales in the third quarter rose 13 percent to $1.90 billion, up from the $1.69 billion in sales posted last year. Excluding the impact of foreign exchange, Baxter's sales grew 16 percent in the third quarter. Domestic sales grew 27 percent, while international sales were flat (or up 7 percent excluding the impact of foreign exchange). The Company's earnings in the first nine months of this year rose 15 percent to $739 million, up from the $645 million reported last year. Earnings per diluted share advanced 13 percent to $1.22, from the $1.08 reported last year. Commenting on these results, defendant Kraemer stated:

> "We will continue to build on our strong momentum with continued focus on operational excellence while significantly increasing our sales and earnings growth rates over time. In order to achieve these goals, we will increase our investments in research and development and capital expenditures.
>
> We are well positioned to not only deliver solid growth in 2002, but also to substantially increase our investment in a number of growth initiatives, including development of new recombinant proteins, vaccines, drug delivery platforms, oncology products and renal dialysis solutions, as well as continued expansion of our BioScience production capacity."

31.     November 11, 2001, Baxter filed its quarterly report with the SEC on Form 10-Q. The Company's Form 10-Q was signed by defendant Andersen and reinforced the previously announced financial results. Additionally and with respect to the presentation of the Company's financial results, Baxter stated:

> In the opinion of management, the interim condensed consolidated financial statements reflect all adjustments necessary for a fair presentation of the interim periods. All such adjustments are of a normal, recurring nature. The results of operations for the interim period are not necessarily indicative of the results of operations to be expected for the full year.

32.     On January 24, 2002, Baxter announced financial results for the full year of 2001. The Company achieved its 2001 annual financial commitments of sales growth in the low-double digits, earnings growth in the mid-teens and operational cash flow in excess of $500 million. Sales in the fourth quarter totaled $2.14 billion, up 11 percent from the $1.93 billion reported for the same period last year. Excluding the impact of foreign exchange, Baxter's sales rose 13 percent in the quarter. Domestic sales grew 19 percent, while international sales rose 3 percent (or 7 percent excluding the impact of foreign exchange). For the full year, Baxter reported sales of $7.66 billion, an increase of 11 percent over the $6.90 billion reported for 2000. Baxter's earnings in the quarter,

-11-

excluding special charges, rose 20 percent to $324 million, from the $270 million reported in 2000.

Earnings per diluted share grew 18 percent to $0.53, from the $0.45 reported last year. For the full

year, Baxter's earnings grew 16 percent to $1.06 billion, up from the $915 million reported last year.

Earnings per diluted share grew 14 percent to $1.75 in 2001, up from the $1.53 reported last year.

Commenting on these results, defendant Kraemer stated:

> "We generated an excellent shareholder return of 23 percent in 2001,
> and achieved our annual financial commitments for 2001, while
> investing more than $1.2 billion in research and development and
> capital expenditures to drive our future growth[.]...I am very proud of
> the progress the entire Baxter team has made. We continued to
> improve our operational excellence, achieved significant milestones
> across our entire business portfolio, and implemented several exciting
> growth initiatives."

33.     On March 12, 2002, Baxter filed its annual report with the SEC on Form 10-K. The

Company's Form 10-K was signed by defendants Kraemer and Anderson and reaffirmed the

Company's previously announced financial results. Additionally, the Company's Form 10-K

contained the following representation by its auditors, PricewaterhouseCoopers LLP, who stated:

"In our opinion, this financial statement schedule presents fairly, in all material respects, the

information set forth therein when read in conjunction with the related consolidated financial

statements."

34.     On April 18, 2002, Baxter reported strong growth in sales and earnings in the first

quarter. Sales advanced 11 percent to $1.95 billion, up from the $1.76 billion reported for the same

period last year, fueled by increased sales of the Company's recombinant and plasma-derived

hemophilia products, as well as growth in its vaccines, oncology and drug delivery businesses.

Without the impact of foreign exchange, Baxter's sales grew 14 percent. Domestic sales increased

-12-

12 percent, while international sales rose 10 percent (or 15 percent excluding the impact of foreign exchange). BioScience sales rose 18 percent in the quarter, totaling $746 million. Sales of Medication Delivery products grew 10 percent to $739 million, while Renal sales advanced 2 percent to $465 million. Baxter's net income in the quarter rose 18 percent to $253 million, from the $214 million reported last year (before a 2001 accounting change). Earnings per diluted share grew 17 percent to $0.41, an increase from the $0.35 per share reported last year.

35.     Commenting on these results, defendant Kraemer stated:

> "Our strong financial performance for the quarter reflects our focus and discipline around operational excellence and our commitment to achieve growth that is sustainable, profitable and capital efficient. We continue to benefit from the groundwork we've laid with expanded manufacturing capacity, continued successful integration of acquisitions, and advancement of key new technologies like our protein-free recombinant manufacturing, vero-cell vaccine and drug delivery platforms[.]"

36.     On May 3, 2002, Baxter filed its quarterly report with the SEC on Form 10-Q. The Company's Form 10-Q was signed by defendant Andersen and reaffirmed its previously announced financial results. Additionally and with respect to the presentation of the Company's financial results, Baxter stated:

> In the opinion of management, the interim condensed consolidated financial statements reflect all adjustments necessary for a fair presentation of the interim periods. All such adjustments are of a normal, recurring nature. The results of operations for the interim period are not necessarily indicative of the results of operations to be expected for the full year.

37.     On July 18, 2002, Baxter reported that its sales grew 8 percent in the second quarter, while earnings declined as a result of acquisition-related and impairment charges. Baxter's sales in the quarter rose 8 percent to $2.02 billion, up from the $1.87 billion reported last year. Excluding

-13-

the impact of foreign exchange, sales rose 9 percent in the second quarter. Sales within the United States grew 7 percent to $1 billion, while sales outside the United States grew 10 percent (or 12 percent excluding foreign exchange) to $1.02 billion. BioScience sales rose 7 percent to $732 million, Medication Delivery sales advanced 15 percent to $817 million and Renal sales declined 1 percent to $473 million. Baxter's net earnings in the second quarter totaled $200 million, or $0.32 per diluted share, a decline of 21 percent from the $253 million, or $0.42 per diluted share reported last year. The second quarter results included two special charges that reduced Baxter's earnings by $0.16 per diluted share. The Company recorded a $51 million pre-tax charge for in-process research and development related to its acquisition of Fusion Medical Technologies, Inc., which closed during the second quarter. Baxter also recorded $70 million in pretax impairment charges to reflect the significant decline in the market value of minority interests that it holds in two public companies.

38.     Commenting on these results, defendant Kraemer stated:

> "Our business fundamentals remain strong, and, excluding special charges, our second quarter earnings were in line with our expectations[.] . . . With continued strong sales of Medication Delivery products and Recombinate hemophilia therapy, as well as improvements in BioScience production yields and cycle times, we expect our sales growth to accelerate in the second half of this year."

39.     On August 17, 2002, Baxter filed its quarterly report with the SEC on Form 10-Q. The Company's Form 10-Q was signed by defendant Andersen and reaffirmed its previously announced financial results. Additionally and with respect to the presentation of the Company's financial results, Baxter stated:

> In the opinion of management, the interim condensed consolidated financial statements reflect all adjustments necessary for a fair presentation of the interim periods. All such adjustments are of a normal, recurring nature. The results of operations for the interim

-14-

period are not necessarily indicative of the results of operations to be
expected for the full year.

40.     On October 17, 2002, Baxter reported increases in sales and earnings for the third
quarter. Baxter's sales advanced 11 percent in the quarter, totaling $2.10 billion, up from the $1.90
billion reported last year. Excluding the impact of foreign exchange, sales rose 9 percent in the
quarter. Sales within the United States increased 3 percent to $1.02 billion, while sales outside the
United States grew 19 percent (or 15 percent excluding the impact of foreign exchange) to $1.09
billion. BioScience sales rose 14 percent to $776 million, Medication Delivery sales increased 16
percent to $832 million and Renal sales declined 2 percent, with sales of $494 million in the quarter.
Contributing to sales growth in the quarter were vaccines, biosurgery products and the Company's
Recombinate recombinant Factor VIII therapy used in the treatment of hemophilia. Recombinate
sales rose nearly 25 percent in the quarter. Also contributing to sales growth in the quarter were drug
delivery, anesthesia and parenteral nutrition products. Baxter's net earnings totaled $316 million in
the third quarter, an increase of 16 percent over the $272 million reported last year. On a per share
basis, Baxter's third quarter earnings totaled $0.51 per diluted share, a 13 percent increase over the
$0.45 per diluted share reported in the same period last year. Baxter's investments in research and
development grew 16 percent in the quarter, to $122 million.

41.     Commenting on these results, defendant Kraemer stated:

"One of the keys to our success is effectively balancing short-term
focus and discipline with investments in long-term growth[.] . . .
There are a number of innovative new products and technologies that
we expect to launch, including our new plasma and albumin free
recombinant Factor VIII therapy, the ALYX blood component
collection system, and the INTERCEPT pathogen inactivation system
for platelets. We continue to make strategic investments in these
product launches, as well as our R&D pipeline, in expanded

> manufacturing capacity and in acquisitions and alliances to position
> the company for accelerated growth over the long term. As a result,
> we believe we are well-positioned to achieve sales growth in the
> low-double digits, earnings per diluted share growth in the mid-teens,
> and to generate $500 million in operational cash flow for full-year
> 2003."

42.     On November 11, 2002, Baxter filed its quarterly report with the SEC on Form 10-Q.

The Company's Form 10-Q was signed by defendant Andersen and reaffirmed its previously

announced financial results. Additionally and with respect to the presentation of the Company's

financial results, Baxter stated:

> In the opinion of management, the interim condensed consolidated
> financial statements reflect all adjustments necessary for a fair
> presentation of the interim periods. All such adjustments are of a
> normal, recurring nature. The results of operations for the interim
> period are not necessarily indicative of the results of operations to be
> expected for the full year.

43.     On January 22, 2003, Baxter reported its financial results for the fourth quarter and

full-year 2002, with sales from continuing operations advancing 10 percent in the quarter and for the

year. Sales from continuing operations in the fourth quarter totaled $2.26 billion, up from the $2.06

billion reported for the same period last year. Foreign exchange contributed 2 percentage points of

growth in the quarter. Domestic sales grew 5 percent, and international sales increased 14 percent.

For the full-year, Baxter reported sales from continuing operations of $8.11 billion, an increase from

the $7.36 billion reported for 2001. Foreign exchange had no effect on the full-year sales. Domestic

sales totaled $3.97 billion, an increase of 7 percent over last year, and international sales totaled

$4.14 billion, an increase of 14 percent. For the full year, excluding discontinued operations and

charges, Baxter's earnings increased 15 percent to $1.24 billion, or 13 percent to $2.00 per diluted

share, from the $1.07 billion, or $1.77 per diluted share reported last year. Including charges and

-16-

discontinued operations, Baxter's net earnings totaled $778 million, or $1.26 per diluted share. This compared with net income of $612 million, or $1.00 per diluted share, reported in 2001.

44.     Commenting on these results, defendant Kraemer stated:

> "Despite a challenging environment, we delivered solid sales and earnings growth and cash flow in 2002[.] . . . We advanced several exciting products through our pipeline and the regulatory review process, expanded our production capacity, invested in new technologies, and completed a number of important acquisitions. All of these initiatives position us well to drive long-term growth that is profitable, sustainable and capital efficient."

45.     On March 12, 2003, Baxter filed its annual report with the SEC on Form 10-K. The Company's Form 10-K was signed by defendants Kraemer and Anderson and reaffirmed the Company's previously announced financial results. Additionally, the Company's Form 10-K contained the following representation by its auditors, PricewaterhouseCoopers LLP, who stated: "In our opinion, this financial statement schedule presents fairly, in all material respects, the information set forth therein when read in conjunction with the related consolidated financial statements."

46.     On April 16, 2003, Baxter reported that it achieved its sales and diluted earnings per share ("EPS") goals for the first quarter of 2003. Baxter's sales grew 6 percent in the first quarter, while earnings declined as a result of product mix and competitive pricing in the plasma market. Baxter's sales from continuing operations in the quarter rose to $2.0 billion, up from $1.88 billion reported for the same period last year. The increase in sales for the first quarter included a 4 percentage-point benefit from foreign exchange. Sales within the United States grew 4 percent to $956 million, while sales outside the United States grew 9 percent to $1.04 billion (or declined 1 percent excluding the impact of foreign exchange). First quarter sales for Renal grew 2 percent to

-17-

$407 million and sales in BioScience were down 1 percent at $740 million. Medication Delivery sales grew 17 percent to $850 million. Contributing to the growth in Medication Delivery were strong sales of anesthesia and drug delivery products, as well as sales from ESI Lederle, which Baxter acquired at the end of 2002. Baxter's earnings from continuing operations in the first quarter totaled $217 million, or $0.36 per diluted share, a decline of 14 percent from the $253 million, or 12 percent from the $0.41 per diluted share reported last year. The first quarter results included a pre-tax impairment charge of $13 million to reflect the decline in the market value of a minority investment.

47.     Commenting on these results, defendant Kraemer stated:

> "Despite the current challenges in the plasma protein business, I expect our sales growth for the full year to be in the 8 to 12 percent range and our EPS growth to be in the $2.10 to $2.20 range, in addition to generating cash flows from continuing operations of $1.3 billion to $1.5 billion before capital expenditures[.] . . . .With the many new product launches we have planned for 2003, combined with our ongoing expansion with current products into new markets, we believe we are well positioned to achieve our goals."

48.     On May 17, 2003, Baxter filed its quarterly report with the SEC on Form 10-Q. The Company's Form 10-Q was signed by defendant Andersen and reaffirmed its previously announced financial results. Additionally and with respect to the presentation of the Company's financial results, Baxter stated:

> In the opinion of management, the interim condensed consolidated financial statements reflect all adjustments necessary for a fair presentation of the interim periods. All such adjustments are of a normal, recurring nature. The results of operations for the interim period are not necessarily indicative of the results of operations to be expected for the full year.

-18-

49.     On July 17, 2003, Baxter reported its second quarter results, with sales increasing 11 percent and income from continuing operations declining primarily as a result of a previously announced restructuring charge. Sales in the second quarter totaled $2.16 billion, an increase of 11 percent. Foreign exchange favorably impacted sales by 5 percent. Baxter's sales within the United States increased 4 percent to $997 million, while sales outside the United States grew 18 percent (including an 11 percent benefit from foreign exchange) to $1.17 billion. In the second quarter, Medication Delivery sales grew 17 percent to $938 million, Renal sales grew 11 percent to $452 million, and BioScience sales grew 5 percent to $773 million. Income from continuing operations totaled $49 million or $0.08 per diluted share in the second quarter, including a special charge resulting from the company's recently announced restructuring plans. The charge totals $337 million, or $202 million after-tax (approximately two-thirds cash and one-third non-cash), or $0.33 per share. This charge includes severance costs for approximately 3,200 employees, representing about 6 percent of Baxter's global workforce, and the write-down of certain facilities. The second quarter results compare to income from continuing operations of $204 million, or $0.33 per diluted share, in the same period last year, including charges. Cash flows from continuing operations in the second quarter were $228 million, an increase of $144 million from the same period last year.

50.     Commenting on these results, defendant Kraemer stated:

> "While our financial results for the second quarter were in line with our expectations, we are confident that our recently announced actions will drive greater profitability, cash flows and shareholder returns over the long term[.] . . . Specifically, we are simplifying our infrastructure by consolidating functions and facilities, as well as continuing to prioritize and focus our R&D investments."

51.     On August 13, 2003, Baxter filed its quarterly report with the SEC on Form 10-Q. The Company's Form 10-Q was signed by defendant Andersen and reaffirmed its previously announced financial results. Additionally and with respect to the presentation of the Company's financial results, Baxter stated:

> In the opinion of management, the interim condensed consolidated financial statements reflect all adjustments necessary for a fair presentation of the interim periods. All such adjustments are of a normal, recurring nature. The results of operations for the interim period are not necessarily indicative of the results of operations to be expected for the full year.

52.     On October 16, 2003, Baxter reported its third quarter results, with sales growth of nine percent and earnings per diluted share from continuing operations of $0.47. Sales in the third quarter totaled $2.22 billion, with foreign exchange favorably impacting sales by three percent. Baxter's sales within the United States increased 10 percent to $1.07 billion, while sales outside the United States grew nine percent (including a seven percent benefit from foreign exchange) to $1.15 billion. In the third quarter, Medication Delivery sales grew 16 percent to $948 million, BioScience sales grew 6 percent to $820 million and Renal sales grew 4 percent to $451 million. Contributing to the growth in the quarter were strong sales of anesthesia, biosurgery, drug delivery and IV therapy products and record sales of recombinant clotting factor, which rose 14 percent in the quarter. Income from continuing operations totaled $278 million or $0.47 per diluted share in the third quarter. The third quarter results compare to income from continuing operations of $317 million, or $0.51 per diluted share, in the same period last year.

53.     Commenting on these results, defendant Kraemer stated:

> "The third quarter financial results were in line with our expectations[.] . . . The actions we have taken to improve our

operational efficiency and simplify our capital structure, together with the launch of new products, position us well to achieve our goals for the year."

54.     On November 16, 2003, Baxter filed its quarterly report with the SEC on Form 10-Q. The Company's Form 10-Q was signed by defendant Andersen and reaffirmed its previously announced financial results. Additionally and with respect to the presentation of the Company's financial results, Baxter stated:

> In the opinion of management, the interim condensed consolidated financial statements reflect all adjustments necessary for a fair presentation of the interim periods. All such adjustments are of a normal, recurring nature. The results of operations for the interim period are not necessarily indicative of the results of operations to be expected for the full year.

55.     On January 29, 2004, Baxter reported fourth quarter results, ending the year at $8.9 billion in sales and net earnings per diluted share from continuing operations of $1.52. Additionally, the Company stated:

> Summary of Fourth Quarter Results
> Baxter's sales in the fourth quarter grew 12 percent to $2.5 billion, favorably impacted by 6 percentage points from foreign exchange. Domestic sales grew 12 percent and international sales grew 13 percent. Baxter's Medication Delivery sales for the first time exceeded $1 billion in a quarter, growing 14 percent to $1.1 billion, driven by strong drug delivery and anesthesia sales. BioScience sales increased 11 percent in the fourth quarter, totaling $938 million, led by strong sales of recombinant products used in the treatment of hemophilia, which grew 27 percent. Baxter's Renal business benefited from the favorable impact of foreign exchange in the quarter, growing 9 percent to $497 million.
>
> Earnings from continuing operations in the fourth quarter totaled $378 million, or $0.62 per diluted share. The company's fourth quarter results included a $0.03 per diluted share gain from the sale of Baxter's stake in Acambis, Inc., as well as $0.04 per diluted share

benefit from the initiatives completed to date relating to the restructuring previously announced in July 2003.

Summary of Full-Year 2003 Financial Results
For the full-year, Baxter's sales grew 10 percent to $8.9 billion, favorably impacted by 5 percentage points from foreign exchange. Domestic sales grew 8 percent to $4.3 billion and international sales grew 12 percent to $4.6 billion. Medication Delivery sales totaled $3.8 billion for the year, an increase of 16 percent. BioScience sales grew 6 percent to $3.3 billion, and Renal sales were up 6 percent in 2003, totaling $1.8 billion.

For full-year 2003, earnings from continuing operations totaled $922 million or $1.52 per diluted share. Baxter's 2003 results included a second quarter restructuring charge of $0.33 per diluted share.

56.     On March 12, 2004, Baxter filed its annual report with the SEC on Form 10-K. The Company's Form 10-K was signed by defendants Kraemer and Anderson and reaffirmed the Company's previously announced financial results. Additionally, the Company's Form 10-K contained the following representation by its auditors, PricewaterhouseCoopers LLP, who stated: "In our opinion, this financial statement schedule presents fairly, in all material respects, the information set forth therein when read in conjunction with the related consolidated financial statements."

57.     On April 22, 2004, Baxter reported its financial results for the first quarter, with sales increasing 11 percent and earnings per diluted share from continuing operations totaling $0.31, compared to the company's guidance of $0.28 to $0.31 per diluted share. Baxter's sales totaled $2.21 billion in the first quarter, with foreign exchange favorably impacting sales by 7 percentage points. Sales within the United States grew 7 percent to $1.02 billion, while sales outside the United States grew 14 percent (including a 12 percentage point benefit from foreign exchange) to $1.19 billion. Sales from Baxter's BioScience business increased 9 percent to $810 million, while the

-22-

company's Medication Delivery business grew 9 percent in the first quarter to $929 million, and

Renal sales grew 16 percent to $470 million.

58.     Commenting on these results, defendant Anderson stated:

> "While organic sales growth was in line with our expectations, we
> need to take further actions to realign our cost structure to drive
> greater profitability[.] . . . Therefore, we will implement a number of
> additional initiatives to better leverage our resources, with a focus on
> standardizing and consolidating work processes and reducing capacity
> in our plasma business, in order to drive sustainable improvements in
> our financial performance."

59.     On May 10, 2004, Baxter filed its quarterly report with the SEC on Form 10-Q. The

Company's Form 10-Q was signed by defendant Andersen and reaffirmed its previously announced

financial results. Additionally and with respect to the presentation of the Company's financial

results, Baxter stated:

> In the opinion of management, the interim condensed consolidated
> financial statements reflect all adjustments necessary for a fair
> presentation of the interim periods. All such adjustments are of a
> normal, recurring nature. The results of operations for the interim
> period are not necessarily indicative of the results of operations to be
> expected for the full year.

60.     The statements contained in ¶¶ 26-59 were materially false and misleading when

made because defendants failed to disclose or indicate the following: (1) that the Company's

financial results during the Class Period were materially overstated; (2) that the overstatement

occurred because the Company improperly and "incorrectly" recognized $40 million in revenues and

maintained inadequate and "incorrect" provisions for bad debts relating to its Brazilian operations;

(3) that as a result of this, the Company's financial results were in violation of Generally Accepted

Accounting Principles ("GAAP"); (4) that the Company lacked adequate internal controls; and (5)

that as a result of the above, the Company's financial results, including its net income figures, were materially and artificially inflated at all relevant times.

## The Truth Begins to Emerge

61.    On July 22, 2004, Baxter announced that it planed to restate its financial results for the years 2001 through 2003, and for the first quarter of 2004. The restatement was primarily the result of incorrect revenue recognition and inadequate provisions for bad debts in Brazil during that period, which would result in a decrease in net income over the restatement period by an amount expected to be no more than $40 million, or $0.07 per diluted share. The restatement was expected to result in adjustments to sales over the period of an amount not more than $70 million, representing less than 0.5 percent of sales in any year.

62.    News of this shocked the market. Shares of Baxter fell $1.48 per share, or 4.59 percent, to close at $30.79 per share on unusually heavy trading volume.

## BAXTER'S VIOLATION OF GAAP RULES

63.    GAAP states that "revenue should not be recognized until it is realized or realizable and earned." FASB Concepts Statement No. 5, ¶83. The conditions for the recognition of revenue are met when "persuasive evidence of an arrangement exists, delivery has occurred or services have been rendered, the seller's price is fixed or determinable, collectibility of the sales price is reasonably assured and when the entity has substantially performed the obligations which entitle it to the benefits represented by the revenue." Here, Baxter improperly recognized revenue when revenue from such transactions was not realizable and earned, which is in violation of GAAP.

-24-

64.     Given these accounting irregularities, the Company announced financial results that were in violation of GAAP, the Company's own announced revenue recognition policies, and the following principles:

(a)     The principle that "interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements" was violated (APB No. 28, ¶10);

(b)     The principle that "financial reporting should provide information that is useful to present to potential investors and creditors and other users in making rational investment, credit, and similar decisions" was violated (FASB Statement of Concepts No. 1, ¶34);

(c)     The principle that "financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and effects of transactions, events, and circumstances that change resources and claims to those resources" was violated (FASB Statement of Concepts No. 1, ¶40);

(d)     The principle that "financial reporting should provide information about an enterprise's financial performance during a period" was violated (FASB Statement of Concepts No. 1, ¶42);

(e)     The principle that "completeness, meaning that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions" was violated (FASB Statement of Concepts No. 2, ¶79);

(f)     The principle that "financial reporting should be reliable in that it represents what it

purports to represent" was violated  (FASB Statement of Concepts No. 2, ¶¶58-59);

and

(g)     The principle that "conservatism be used as a prudent reaction to uncertainty to try

to ensure that uncertainties and risks inherent in business situations are adequately

considered" was violated.  (FASB Statement of Concepts No. 2, ¶95).

65.     The adverse information concealed by defendants during the Class Period and

detailed above was in violation of Item 303 of Regulation S-K under the federal securities law (17

C.F.R. 229.303).

### UNDISCLOSED ADVERSE FACTS

66.     The market for Baxter's securities was open, well-developed and efficient at all

relevant times.  As a result of these materially false and misleading statements and failures to

disclose, Baxter's securities traded at artificially inflated prices during the Class Period.  Plaintiff

and other members of the Class purchased or otherwise acquired Baxter securities relying upon the

integrity of the market price of Baxter's securities and market information relating to Baxter, and

have been damaged thereby.

67.     During the Class Period, defendants materially misled the investing public, thereby

inflating the price of Baxter's securities, by publicly issuing false and misleading statements and

omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not

false and misleading.  Said statements and omissions were materially false and misleading in that

they failed to disclose material adverse information and misrepresented the truth about the Company,

its business and operations, as alleged herein.

68.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Baxter's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Baxter and its business, prospects and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## ADDITIONAL SCIENTER ALLEGATIONS

69.     As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Baxter, their control over, and/or receipt and/or modification of Baxter allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Baxter, participated in the fraudulent scheme alleged herein.

-27-

70.     Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public. The ongoing fraudulent scheme described in this complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

71.     During the Class period, and with its stock was trading at artificially inflated prices, defendants were able to complete an equity offering of its common stock for proceeds totaling $671,000,000 in proceeds on September 8, 2003.

72.     Moreover, defendant Anderson on April 26, 2004 sold 44,902 shares of his Baxter stock for proceeds totaling $1,458,865.98. On April 29, 2004, insider and Senior Vice President, Carlos A. Del Salto, sold 140,000 shares of Baxter stock at prices ranging from $31.57-$32.18 per share, for proceeds totaling $4,444,890.

73.     Additionally, defendants, during the Class Period, were able to complete at least three acquisitions of companies using its artificially inflated stock as payment.

### Applicability Of Presumption Of Reliance:
### Fraud-On-The-Market Doctrine

74.     At all relevant times, the market for Baxter securities was an efficient market for the following reasons, among others:

(a) Baxter stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b) As a regulated issuer, Baxter filed periodic public reports with the SEC and the NYSE;

-28-

(c) Baxter regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d) Baxter was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

75. As a result of the foregoing, the market for Baxter securities promptly digested current information regarding Baxter from all publicly-available sources and reflected such information in Baxter stock price. Under these circumstances, all purchasers of Baxter securities during the Class Period suffered similar injury through their purchase of Baxter securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

76. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-

-29-

looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Baxter who knew that those statements were false when made.

**COUNT I**

**Violation Of Section 10(b) Of
The Exchange Act Against And Rule 10b-5
Promulgated Thereunder Against All Defendants**

77.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

78.    During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Baxter securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

79.    Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Baxter securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

-30-

80. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Baxter as specified herein.

81. These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Baxter value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Baxter and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Baxter securities during the Class Period.

82. Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and

-31-

sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

83. The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Baxter operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

84. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Baxter securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Baxter publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, Plaintiff and the other members of the Class acquired Baxter securities during the Class Period at artificially high prices and were damaged thereby.

-32-

85. At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Baxter was experiencing, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Baxter securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

86. By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

87. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## COUNT II

### Violation Of Section 20(a) Of
### The Exchange Act Against the Individual Defendants

88. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

89. The Individual Defendants acted as controlling persons of Baxter within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and

control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contend are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

90.     In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

91.     As set forth above, Baxter and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

-34-

(b)   Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)   Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: July 27, 2004

DENNIS HIGGINBOTHAM,  Individually and On Behalf of All Others Similarly Situated, Plaintiff

By:

Marvin A. Miller
Jennifer W. Sprengel
Christopher B. Sanchez
**MILLER FAUCHER AND CAFFERTY LLP**
30 North LaSalle Street
Suite 3200
Chicago, Illinois  60602
(312) 782-4880

*Designated Local Counsel*

Marc A. Topaz
Richard A. Maniskas
**SCHIFFRIN & BARROWAY, LLP**
Three Bala Plaza East
Suite 400
Bala Cynwyd, Pennsylvania  19004
(610) 667-7706

*Attorneys for Plaintiff*

-35-

**CERTIFICATION OF NAMED PLAINTIFF**
**PURSUANT TO FEDERAL SECURITIES LAWS**

I, Dennis P. Higginbotham, (plaintiff) declare, as to the claims asserted under the federal securities laws, that:

1.     Plaintiff has reviewed the Complaint and retains Schiffrin & Barroway, LLP and such co-counsel it deems appropriate to associate with to pursue such action on a contingent fee basis.

2.     Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3.     Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.     Plaintiff's transactions in the Baxter International, Inc. (NYSE: BAX) security that is the subject of this action during the Class Period are as follows:

| No. of Shares | Buy/Sell | Date | Price Per Share |
|---|---|---|---|
| 25 | B | 4/30/02 | $36.82 |
| 25 | S | 3/14/03 | $19.84 |
| 45 | B | 3/20/02 | $55.66 |
| 45 | S | 3/14/03 | $19.84 |

List additional transactions on a separate sheet of paper, if necessary.

5.     During the three years prior to the date of this Certification, Plaintiff has sought to serve or served as a representative party for a class in the following actions filed under the federal securities laws:  N/A

6.     Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 23 day of July, 2004.

DENNIS P. HIGGINBOTHAM

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS



# Civil Cover Sheet

DOCKETED

JUL 2 8 2004

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use <u>only</u> in the Northern District of Illinois.

**Plaintiff(s): Dennis Higginbotham,**

County of Residence: Dekalb County

Plaintiff's Atty: Miller Faucher and Cafferty LLP
30 North LaSalle Street, Suite 3200
Chicago, Illinois 60602
(312) 782-4880

**Defendant(s):Baxter International, Inc., et al.,**

County of Residence:

Defendant's Atty:

*JUDGE HART*

# 04C 4909

II. Basis of Jurisdiction:      **3. Federal Question (U.S. not a party)**

III. Citizenship of Principal Parties **(Diversity Cases Only)**

*MAGISTRATE JUDGE BOBRICK*

Plaintiff:- **N/A**
Defendant:- **N/A**

IV. Origin :      **1. Original Proceeding**

V. Nature of Suit:      **850 Securities / Commodities / Exchange**

VI.Cause of Action:      **15 U.S.C. §§ 78j(b) and 78t(a)**

VII. Requested in Complaint
Class Action: **Yes**
Dollar Demand:
Jury Demand: **Yes**

VIII. This case **IS NOT** a refiling of a previously dismissed case.

Signature:

Date:  7/27/04

If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the *Back* button in your browser and change it. Once correct, print this form, sign and date it and submit it with your new civil action. **Note: You may need to adjust the font size**

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

In the Matter of

**DENNIS HIGGINBOTHAM,**

v.

**BAXTER INTERNATIONAL, INC., et al.,**

DOCKETED

JUL 2 8 2004

JUDGE HART

Case Number:

**04C 4909**

MAGISTRATE JUDGE BOBRICK

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Dennis Higginbotham, individually and on behalf of all others similarly situated, Plaintiff

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME Marc A. Topaz | NAME Marvin A. Miller |
| FIRM Schiffrin & Barroway, LLP | FIRM Miller Faucher and Cafferty LLP |
| STREET ADDRESS Three Bala Plaza East, Suite 400 | STREET ADDRESS 30 North LaSalle Street, Suite 3200 |
| CITY/STATE/ZIP Bala Cynwyd, Pennsylvania 19004 | CITY/STATE/ZIP Chicago, Illinois 60602 |
| TELEPHONE NUMBER (610) 667-7706   FAX NUMBER | TELEPHONE NUMBER (312) 782-4880   FAX NUMBER 782-4485 |
| E-MAIL ADDRESS | E-MAIL ADDRESS mmiller@millerfaucher.com |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 01916769 |
| MEMBER OF TRIAL BAR?   YES ☐   NO ☑ | MEMBER OF TRIAL BAR?   YES X   NO ☐ |
| TRIAL ATTORNEY?   YES ☑   NO ☐ | TRIAL ATTORNEY?   YES X   NO ☐ |
| | DESIGNATED AS LOCAL COUNSEL?   YES X   NO ☐ |

| (C) | (D) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME Richard A. Maniskas | NAME Jennifer W. Sprengel |
| FIRM Same as (A) | FIRM Same as (B) |
| STREET ADDRESS | STREET ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER   FAX NUMBER | TELEPHONE NUMBER   FAX NUMBER |
| E-MAIL ADDRESS | E-MAIL ADDRESS jsprengel@millerfaucher.com |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 06204446 |
| MEMBER OF TRIAL BAR?   YES ☐   NO ☑ | MEMBER OF TRIAL BAR?   YES ☑   NO ☑ |
| TRIAL ATTORNEY?   YES ☑   NO ☐ | TRIAL ATTORNEY?   YES ☑   NO ☐ |
| DESIGNATED AS LOCAL COUNSEL?   YES ☐   NO ☑ | DESIGNATED AS LOCAL COUNSEL?   YES ☑   NO ☐ |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

In the Matter of

**DENNIS HIGGINBOTHAM,**

v.

**BAXTER INTERNATIONAL, INC., et al.**

**DOCKETED**

JUL 2 8 2004

JUDGE HART

Case Number:  

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Dennis Higginbotham, individually and on behalf of all others similarly situated, Plaintiff

MAGISTRATE JUDGE BOBRICK

| (E) | (F) |
|---|---|
| SIGNATURE  *Christopher B. Sanchez* | SIGNATURE |
| NAME  Christopher B. Sanchez | NAME |
| FIRM  Same as (B) | FIRM |
| STREET ADDRESS | STREET ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER          FAX NUMBER | TELEPHONE NUMBER          FAX NUMBER |
| E-MAIL ADDRESS  csanchez@millerfaucher.com | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)  06272989 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR?     YES ☐   NO ☐ | MEMBER OF TRIAL BAR?     YES ☐   NO ☐ |
| TRIAL ATTORNEY?     YES ☐   NO ☐ | TRIAL ATTORNEY?     YES ☐   NO ☐ |
|  | DESIGNATED AS LOCAL COUNSEL?     YES ☐   NO ☐ |
| **(G)** | **(H)** |
| SIGNATURE | SIGNATURE |
| NAME | NAME |
| FIRM | FIRM |
| STREET ADDRESS | STREET ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER          FAX NUMBER | TELEPHONE NUMBER          FAX NUMBER |
| E-MAIL ADDRESS | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR?     YES ☐   NO ☐ | MEMBER OF TRIAL BAR?     YES ☐   NO ☐ |
| TRIAL ATTORNEY?     YES ☐   NO ☐ | TRIAL ATTORNEY?     YES ☐   NO ☐ |
| DESIGNATED AS LOCAL COUNSEL?     YES ☐   NO ☐ | DESIGNATED AS LOCAL COUNSEL?     YES ☐   NO ☐ |