IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


DENNIS HIGGINBOTHAM, individually )
and on behalf of all others )
similarly situated, )
)
                    Plaintiffs, )
)
          v. )          No. 04 C 4909
)
BAXTER INTERNATIONAL, INC., )
HARRY M. JANSEN KRAEMER, JR., )
BRIAN P. ANDERSON and )
JOHN GREISCH, )
)
                    Defendants. )
_____ )
)
TODD KATZ, as Vice President of )
Bloomfield, Inc., on behalf of )
all others similarly situated, )
)
                    Plaintiff, )
)
          v. )          No. 04 C 7096
)
BAXTER INTERNATIONAL, INC., )
)
                    Defendant. )


## MEMORANDUM OPINION AND ORDER


     This is a securities fraud putative class action which is

subject to the Private Securities Litigation Reform Act of 1995

("PSLRA"), 15 U.S.C. § 78u-4 et seq.  Three cases have been

consolidated, lead plaintiffs have been appointed, and a

Consolidated Class Action Complaint ("CAC") has been filed.[1] One other case has been reassigned, but has not yet been consolidated into the CAC because the named plaintiff in that case has moved for a remand to state court. See Katz v. Baxter International, Inc., No. 04 C 7096 (N.D. Ill.) ("Katz").

In the CAC, plaintiffs name as defendants: Baxter International, Inc. ("Baxter"); Harry Kraemer, Baxter Chairman and Chief Executive Officer from 1999 until April 2004;[2] Brian Anderson,[3] Baxter's Senior Vice President and Chief Financial Officer from February 1998 until June 21, 2004; and John Greisch, a Baxter Corporate Vice President and President of its BioScience business beginning in 2002, and Baxter's Chief Financial Officer since June 21, 2004. For the first quarter of 2001 through the first quarter of 2004, Baxter overstated its revenues and net income. This resulted from the overstatement of net sales and net income from Baxter's Brazil operations and inadequate recognition of bad debt from Baxter's Brazil operations. On July 22, 2004, Baxter publicly announced that it would be

---

[1] No motion for class certification has been filed. Class certification will be denied without prejudice.

[2] It is alleged that Robert Parkinson has been Baxter's Chairman and Chief Executive Officer since April 2004. He is not named as a defendant.

[3] The pleadings are inconsistent as to whether this defendant's name is Anderson or Andersen. Anderson appears to be the correct spelling.

- 2 -

restating its financial results for 2001 through 2003 and the
first quarter of 2004. It is alleged that, throughout this time
period, defendants knowingly or recklessly allowed the inaccurate
financial results to be released. Immediately after the initial
announcement, sales of Baxter's shares fell $1.48 per share,
which was 4.59% of their prior value. Plaintiffs allege that
all defendants violated § 10(b) of the Securities Exchange Act,
15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5. The
individual defendants are also alleged to have control person
liability under § 20(a) of the Securities Exchange Act, 15 U.S.C.
§ 78t(a).

The Katz case was originally filed in the Circuit Court
of Cook County, Illinois. Defendant Baxter removed the Katz
case. The Katz case is also a putative class action. The Katz
Complaint contains allegations similar to the CAC, but the only
named defendant in the Katz Complaint is Baxter and the
allegations regarding misstated earnings and income are limited
to the misstatement of 2001 and 2002 earnings and income. The
Katz Complaint focuses on alleged misstatements in Baxter's
registration statements and the only claim is one for violation
of § 11 of the Securities Act of 1933, 15 U.S.C. § 77k. The Katz
Complaint does not contain any state law claims or Exchange Act
claims.

Presently pending is defendants' motion to dismiss all counts of the CAC. Also pending is Katz's motion to remand the Katz case. The remand motion will be considered first.

Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), provides that jurisdiction over Securities Act claims may be in either state or federal court. Prior to 1998, § 22(a) provided in part that "No case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States." Prior to 1998, § 16 of the Securities Act, 15 U.S.C. § 77p, provided that "rights and remedies provided by this subchapter shall be in addition to any and all other rights and remedies that may exist at law or in equity."

In 1998, Congress amended § 16 of the Securities Act to preempt certain state law claims. With exceptions set forth in § 16(d), § 16(b) now provides:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging--
>
> > (1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or
> >
> > (2) that the defendant used or employed any manipulative or deceptive device or

- 4 -

contrivance in connection with the purchase or
sale of a covered security.

15 U.S.C. § 77p(b).

Congress also added § 16(c) of the Securities Act which

provides:

Any covered class action brought in any
State court involving a covered security, as set
forth in subsection (b), shall be removable to
the Federal district court for the district in
which the action is pending, and shall be subject
to subsection (b).

15 U.S.C. § 77p(c).

Consistent with the amendment of § 16, § 22(a) was

amended to provide:

Except as provided in section 77p(c) of this
title, no case arising under this subchapter and
brought in any State court of competent
jurisdiction shall be removed to any court of the
United States.

15 U.S.C. § 77v(a) (emphasis added).

Katz contends § 22(a) prohibits the removal of his case.

He contends that his case does not fall into the § 16(c)

exception because it contains no state law claims.  Baxter

contends that the pertinent statutory provisions should be

construed in light of the purposes and legislative history of the

1998 amendments and, therefore, § 16(c) should be read as

permitting removal of cases containing § 11 claims, but no state
law claims.

　　　　The language of the statutes are clear and unambiguous.
No case containing a § 11 claim is removable from state court
unless it meets the exception set forth in § 16(c).  Section
16(c) provides that it only applies to covered class actions "as
set forth in subsection [16](b)."  To be a class action set forth
in § 16(b), the case must be <u>inter alia</u> a "covered class action
based upon the statutory or common law of any State or
subdivision thereof."  The language of these statutes plainly and
unambiguously limit removal to certain class actions containing
state law claims.  <u>California Public Employees' Retirement</u>
<u>System v. WorldCom, Inc.</u>, 368 F.3d 86, 98 (2d Cir. 2004), <u>cert.</u>
<u>denied</u>, 125 S. Ct. 862 (2005); <u>In re Tyco International, Ltd.</u>,
322 F. Supp. 2d 116, 119-21 (D.N.H. 2004); <u>Hawaii Structural</u>
<u>Ironworkers Pension Trust Fund v. Calpine Corp.</u>, 2003 WL 23509312
*2 (S.D. Cal. Aug. 27, 2003); <u>Nauheim v. Interpublic Group of</u>
<u>Cos.</u>, 2003 WL 1888843 *3-4 (N.D. Ill. April 16, 2003); <u>In re</u>
<u>Waste Management, Inc. Securities Litigation</u>, 194 F. Supp. 2d
590, 593 (S.D. Tex. 2002).  Where the statutory language is plain
and unambiguous and does not produce an absurd result, that
language should be applied and legislative history need not be
considered.  <u>Whitfield v. United States</u>, 125 S. Ct. 687, 692
(2005); <u>National Organization for Women, Inc. v. Scheidler</u>,

- 6 -

396 F.3d 807, 816 (7th Cir. 2005); City of Chicago v. United
States Department of Treasury, 384 F.3d 429, 435 (7th Cir. 2004);
Kramer v. Banc of America Securities, LLC, 355 F.3d 961, 966 (7th
Cir.), cert. denied, 124 S. Ct. 2876 (2004); Nauheim, 2003 WL
188843 at *3. The plain language of the statute will be
followed. Nauheim, 2003 WL 188843 at *3-5.

Because the only claim in the Katz case is a § 11 federal
securities law claim, the Katz case was not removable. The Katz
case will be remanded to state court.

Still to be considered is the motion to dismiss the CAC.
The basic elements of a § 10(b) claim are: (1) a material
misrepresentation or omission, (2) scienter, (3) a connection
with the purchase or sale of a security, (4) reliance,
(5) economic loss, and (6) loss causation. Dura Pharmaceuticals,
Inc. v. Broudo, 125 S. Ct. 1627, 1631 (2005). Defendants contend
plaintiff has failed to adequately allege the second element,
scienter. The PSLRA provides that, "with respect to each act or
omission alleged to violate" § 10(b), plaintiff must "state with
particularity facts giving rise to a strong inference that
the defendant acted with the required" scienter. 15 U.S.C.
§ 78u-4(b)(2); DH2, Inc. v. Athanassiades, 359 F. Supp. 2d 708,
717 (N.D. Ill. 2005); Stephenson v. Hartford Life & Annuity
Insurance Co., 2004 WL 2260616 *7 (N.D. Ill. Oct. 1, 2004).

- 7 -

The required scienter for a § 10(b) claim is "a mental state embracing intent to deceive, manipulate, or defraud," Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 (1976); Hallberg v. American Agencies General Agencies, Inc., 2005 WL 563211 *3 (N.D. Ill. March 8, 2005), and also includes "reckless disregard of the truth." S.E.C. v. Jakubowski, 150 F.3d 675, 681 (7th Cir. 1998), cert. denied, 525 U.S. 1103 (1999); Sundstrand Corp. v. Sun Chemical Corp., 553 F.2d 1033, 1044-45 (7th Cir.), cert. denied, 434 U.S. 875 (1977); Hallberg, 2005 WL 563211 at *3; Marwil v. Ent & Imler CPA Group, PC, 2004 WL 2750255 *5 (S.D. Ind. Nov. 24, 2004). "Reckless conduct may be defined as a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." Sundstrand, 553 F.2d at 1045; Marwil, 2004 WL 2750255 at *5.

A number of district court cases in the Seventh Circuit have adopted the Second Circuit standard that scienter may be adequately alleged by either (a) facts showing that the particular defendant had both motive and opportunity to commit fraud or (b) facts constituting strong circumstantial evidence of conscious misbehavior or recklessness. See Ong v. Sears, Roebuck & Co., 2004 WL 2534615 *27 (N.D. Ill. Sept. 27, 2004);

- 8 -

In re Spiegel, Inc. Securities Litigation, 2004 WL 1535844 *24-25
(N.D. Ill. July 8, 2004). Other cases have criticized this
approach as too narrowly focusing on particular factors instead
of viewing the allegations as a whole in order to determine
whether a strong inference of scienter may be drawn. See, e.g.,
Johnson v. Tellabs, Inc., 303 F. Supp. 2d 941, 961 (N.D. Ill.
2004) (quoting Ottmann v. Hanger Orthopedic Group, Inc., 353 F.3d
338, 345 (4th Cir. 2003)). See also Charles Alan Wright & Arthur
R. Miller, Federal Practice & Procedure § 1301.1 (3d ed. 2004).

According to Baxter's August 6, 2004 Restatement of
financial results for 2001 through the first quarter of 2004, the
"restatement is primarily the result of the inappropriate
application of accounting principles for revenue recognition and
inadequate provisions for bad debts in Brazil during the period."
CAC ¶ 34. An investigation by the Audit Committee of Baxter's
Board of Directors had revealed:

> (i) "an ineffective control environment
> maintained by senior management in Brazil,
> including intentional overrides by senior
> management in Brazil of internal controls;"
> (ii) "inadequate revenue recognition controls in
> Brazil;" (iii) "inadequate controls in Brazil to
> ensure adherence to generally accepted accounting
> principles for loss contingencies, including bad
> debts;" and (iv) "ineffective financial review by
> management responsible for the Intercontinental
> region, which includes Latin America."

Id. ¶ 35. The Audit Committee is also quoted as stating that these issues collectively "constitute a material weakness in the company's internal controls over financial reporting." Id. ¶ 36. A substantial portion of the improperly recognized revenue resulted "from sales to fictitious customers, fictitious sales to actual customers, and the illegal rigging of bids for the sale of blood byproducts to the Brazilian government. Certain of the inadequate provisions for bad debts were the result of Baxter's Brazilian management's involvement in a kickback scheme with product vendors." Id. ¶ 37.

Beginning in April 2004, investigations and accusations were publicly disclosed in Brazil regarding a Brazilian blood products price-fixing cartel. Baxter was an alleged participant in the scheme. On April 20, 2004, there was a Brazilian newspaper item regarding these accusations. On April 29, 2004, the Brazilian Ministry of Justice initiated an administrative proceeding in which Baxter was accused of being involved in the cartel's price-fixing practices. On May 19, 2004, Brazilian Federal Police conducting a related investigation launched several search and seizure operations in the blood products industry. A number of people were arrested, including a former employee of Baxter's Brazilian operation. On May 21, 2004, a Brazilian newspaper published a report that the Brazilian General Accounting Office had conducted an investigation and found that

- 10 -

the blood products cartel existed. On the same day, another newspaper reported that Baxter was one of the participants in the cartel. On May 26, 2004, the Secretary of Economic Rights ordered an investigation of several companies, including Baxter. See CAC ¶¶ 45-51. These allegations do not specifically refer to the kickback scheme, only the price-fixing scheme. Also, there is no specific allegation that, prior to July 2004, any of the individual defendants were aware of these investigations and accusations.

The CAC also contains allegations regarding kickbacks. See CAC ¶¶ 52-56. These include allegations that the President, Human Resources Director, Finance Director, and Sales Manager for Baxter's Brazilian operations were involved. These paragraphs do not include any allegation that the individual defendants were aware of this conduct.

For the three years ending December 31, 2003, Baxter's Restatement of financial results decreased net sales by a total of $37,000,000 and net income decreased by a total of $33,000,000. For the first quarter of 2004, net sales were unchanged and net income decreased $2,000,000. During the three-year period, net sales as corrected were $24,345,000,000. The $37,000,000 overstatement represented 0.15% of Baxter's corrected net sales. For the three-year period, the corrected net income

total was $2,238,000,000. The $33,000,000 overstatement represented 1.47% of corrected net income.

Throughout the pertinent time period, Anderson signed quarterly Forms 10-Q in which it was represented that the "financial statements reflect all adjustments necessary for a fair representation." Beginning with the Form 10-Q for the second quarter of 2002, as required by the Sarbanes-Oxley Act of 2002, 15 U.S.C. § 7241, Anderson and Kraemer signed certifications as to the accuracy of each Form 10-Q.[4] Anderson and Kraemer signed the annual Forms 10-K for 2002 and 2003, which also contained statements required by Sarbanes-Oxley. The statements included that these two defendants "concluded that the Company's disclosure controls and procedures are effective in alerting them in a timely fashion to material information relating to Baxter required to be included in reports that the Company files under the Exchange Act." CAC ¶ 78. There is no allegation as to any statement made by Greisch. The aforementioned statements are claimed to be misrepresentative because the financial statements included misstated Brazilian sales/income and the statements of defendants failed to

---

[4]Kraemer did not sign the Form 10-Q for the first quarter of 2004. See CAC ¶ 94. He was no longer employed by Baxter when that report was filed.

acknowledge the allegedly inadequate controls regarding Brazilian operations.

As to scienter, plaintiffs particularly point to the following allegations. Plaintiffs point to the conclusory statements in the August 2004 Restatement that (a) management responsible for the region engaged in "ineffective financial review" and (b) Baxter internal controls over financial reporting was weak. See CAC ¶¶ 35-36.[5] Plaintiffs contrast these statements with Anderson's and Kraemer's statements that "the Company's disclosure controls and procedures are effective." CAC ¶ 78. See also CAC ¶ 91. Plaintiffs, however, provide no specific allegations as to what the deficiencies in the controls were, nor are there any specific allegations as to Anderson's or Kraemer's awareness of those deficiencies. These are not particularized allegations. Cf. Abrams v. Baker Hughes Inc., 292 F.3d 424, 432 (5th Cir. 2002); In re Silicon Graphics Inc. Securities Litigation, 183 F.3d 970, 985 (9th Cir. 1999); In re Foundry Networks, Inc., 2003 WL 23211577 *6 (N.D. Cal. Feb. 14, 2003). These allegations do not provide a basis for drawing a strong inference that Anderson and Kraemer made intentional or reckless misrepresentations.

---

[5]Other allegations contained in ¶ 35 are limited to employees in Baxter's Brazilian operations.

Plaintiffs allege that Greisch received monthly reports of the financial results of Baxter's Brazilian operations. See CAC ¶ 39. It is also alleged that, as Senior Vice President of Finance in the Renal Division, Greisch had oversight of the Brazilian operations. Id. ¶ 109. The monthly reports alleged in ¶ 39, however, are reports that already contained the inaccurate financial information. There are no specific allegations that would support that Greisch could discern from these reports that they contained false information. The mere fact of Greisch's supervision and receipt of reports are not a sufficient basis for inferring that Greisch knew the reports were inaccurate. See PR Diamonds, Inc. v. Chandler, 364 F.3d 671, 687-88 (6th Cir. 2004); Abrams, 292 F.3d at 432; Silicon Graphics, 183 F.3d at 985; Tellabs, 303 F. Supp. 2d at 963; Foundry Networks, 2003 WL 23211577 at *6; Chu v. Sabratek Corp., 100 F. Supp. 2d 827, 837 (N.D. Ill. 2000).

Plaintiffs also point to their allegation that the "fictitious contracts were brought to the attention of defendant Greisch on a regular basis, and to defendant Anderson at least as early as May 2004." CAC ¶ 43. Although open to interpretation, it will be assumed that this allegation does not merely mean that the contracts themselves were brought to defendants' attention, but also that they were made aware that the contracts were fictitious and included in financial reports. Even so

- 14 -

interpreted, this allegation is conclusory and therefore insufficient to infer scienter. In order to draw a strong inference, plaintiffs must provide some details as to the contents of the reports, as well as when and how reported. Abrams, 292 F.3d at 432; Silicon Graphics, 183 F.3d at 985; Tellabs, 303 F. Supp. 2d at 963; Foundry Networks, 2003 WL 23211577 at *6.

Additionally, even if it were adequately alleged that Greisch had knowledge of, or reckless disregard, of the inaccurately reported sales/income, there is no sufficient basis for holding him liable because there are no allegations that he was responsible for or made any inaccurate representation. The claims against Greisch cannot be sustained unless it is specifically alleged that he was responsible for the misrepresentations that have been specifically alleged. Southland Securities Corp. v. Inspire Insurance Solutions Inc., 365 F.3d 353, 365 (5th Cir. 2004); Tellabs, 303 F. Supp. 2d at 965; Friedman v. Rayovac Corp., 295 F. Supp. 2d 957, 993 (W.D. Wis. 2003). Since Greisch is not alleged to be responsible for any misrepresentation, all claims against him will be dismissed.

Plaintiffs also contend that scienter can be inferred from the allegations that an overstatement of sales/income occurred, Baxter's use of stock for stock acquisitions and offerings, and officers' sales of stock in April 2004.

Plaintiffs further contend that these allegations should be considered along with the "direct evidence of intentional fraud." Pl. Answer Brief at 15. Any direct allegations of fraud, however, essentially are limited to allegations regarding Baxter managers in Brazil. There are no direct allegations regarding Kraemer's knowledge of the improper reporting from Brazil. As previously discussed, any allegations regarding Greisch's knowledge are irrelevant because he was not involved in making the alleged misrepresentations. In any event, as previously discussed, the conclusory allegations as to his knowledge are insufficient to draw the necessary inferences. That leaves only the conclusory allegation in ¶ 43 of the CAC that "fictitious contacts" were brought to Anderson's attention "at least as early as May 2004." As previously discussed, that is a conclusory allegation that is insufficient to support that Anderson had knowledge of the fiction at the time. Moreover, the last alleged misrepresenta-tion is the first quarter of 2004 Form 10-Q that was filed on May 10, 2004. CAC ¶ 94. Thus, even if it were not ignored as conclusory, the allegation that Anderson had knowledge "as early as May 2004" is not specific enough to establish that he had knowledge prior to any of the alleged misrepresentations. The circumstantial evidence must be considered on its own. There is no adequate "direct evidence" to consider along with it.

Overstatements of income or revenues are not by themselves sufficient to draw an inference of scienter. There must also be other allegations, direct or circumstantial, that together will support a strong inference of scienter. PR Diamonds, 364 F.3d at 695; In re Navarre Corp. Securities Litigation, 299 F.3d 735, 745 (8th Cir. 2002); In re Anicom Inc., 2001 WL 536066 *5 (N.D. Ill. May 18, 2001); Chu, 100 F. Supp. 2d at 824. Additionally, if the misstated income or revenues is small in magnitude, stronger allegations will be needed to sufficiently support the inference of scienter. See In re priceline.com Inc. Securities Litigation, 342 F. Supp. 2d 33, 57 (D. Conn. 2004); In re Allied Products Corp., Inc. Securities Litigation, 2000 WL 1721042 *3-4 (N.D. Ill. Nov. 15, 2000); In re MicroStrategy, Inc. Securities Litigation, 115 F. Supp. 2d 620, 635 & n.30 (E.D. Va. 2000); In re Baan Co. Securities Litigation, 103 F. Supp. 2d 1, 21 (D.D.C. 2000). In the present case, net income was overstated by approximately 1.5%, which is not a particularly substantial number. Cf. Stavros v. Exelon Corp., 266 F. Supp. 2d 833, 851 (N.D. Ill. 2003); In re SCB Computer Technology, Inc., Securities Litigation, 149 F. Supp. 2d 334, 351 (W.D. Tenn. 2001).

The allegations as to motive are insufficient, when considered along with the overstatements, to support a strong inference of scienter. Plaintiffs allege the following

transactions by Baxter: (a) in May 2001, Baxter issued $800,000,000 of convertible debentures; (b) in August 2001, Baxter acquired Cook Pharmaceutical Solutions for cash and 2,111,047 shares of common stock; (c) in April 2002, Baxter issued $500,000,000 of term debt; (d) in May 2002, Baxter acquired Fusion Medical Technologies, Inc. for 2,806,660 shares of common stock; (e) in December 2002, Baxter issued $1,250,000,000 in senior notes; (f) in March 2003, Baxter issued $600,000,000 in term debt; (g) in 2002 Baxter issued 14,950,000 shares of common stock for $414,000,000 in net proceeds; and (h) in 2003 Baxter issued 22,000,000 shares of common stock for $644,000,000 in net proceeds. CAC ¶¶ 112-118. It is not reasonable to infer that Anderson and Kraemer were motivated to overstate net income by a mere 1.5% ($33,000,000 over three years) in order to obtain more favorable rates or returns for the listed transactions valued at more than $4,000,000,000. Even if the 1.5% overstatement were to be considered significant enough to affect the alleged transactions, plaintiffs fail to allege facts connecting the overstatements to the transactions nor any facts supporting that the individual defendants would directly benefit from these transactions. Apparently, plaintiffs simply listed all significant transactions that Baxter engaged in during the time period. That can never be sufficient. See PR Diamonds, 364 F.3d at 690; Bombach v. Chang, 355 F.3d 164, 177 (2d Cir.

- 18 -

2004); Ottmann, 353 F.3d at 352; City of Philadelphia v. Fleming Cos., 264 F.3d 1245, 1269 (10th Cir. 2001); In re Cross Media Marketing Corp. Securities Litigation, 314 F. Supp. 2d 256, 264-65 (S.D.N.Y. 2004); In re Allscripts, Inc. Securities Litigation, 2001 WL 743411 *11 (N.D. Ill. June 29, 2001).

The other alleged fact concerning motivation is Anderson's April 26, 2004 sale of 44,902 shares of stock for $1,458,865.98. CAC ¶ 120.[6] Defendants contend attributing a fraudulent motive to this transaction is inconsistent with the allegation that Anderson did not learn of fictitious contracts until May 2004. That allegation, however, is that Anderson learned about the fictitious contracts "at least as early as May 2004," CAC ¶ 43, leaving open the possibility that he had learned earlier. Plaintiffs apparently contend that the circumstantial evidence of the stock sale would support that Anderson had knowledge of wrongdoing prior to May 2004.

The allegations as to Anderson's stock sale are insufficient to draw a strong inference of scienter. More must be alleged than simply a sale within the pertinent time period. In re AMDOCS Ltd. Securities Litigation, 390 F.3d 542, 550 (8th

---

[6]Allegations that a Senior Vice President sold 140,000 shares of stock on April 29, 2004 need not be considered. There are no allegations that this officer had any knowledge of the overstated income or was in any way involved in the alleged fraudulent misconduct.

Cir. 2004); Navarre, 299 F.3d at 747; Silicon Graphics, 183 F.3d at 986; In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1424 (3d Cir. 1997); Gaines v. Guidant Corp., 2004 WL 2538374 *17 n.39 (S.D. Ind. Nov. 8, 2004); Tellabs, 303 F. Supp. 2d at 962. Here there are no allegations regarding Anderson's trading history that would support that the April 2004 sale was unusual or otherwise suspicious. There are also no allegations connecting the April 2004 sale with any particular event or Anderson acquiring any particular information. Anderson's April 2004 stock sale is no basis for drawing a strong inference of scienter.

There are no allegations in the CAC adequately supporting that the individual defendants acted with the necessary scienter. Therefore, the direct claims against the individual defendants must be dismissed.

Plaintiffs argue that the § 10(b) claim against Baxter is sufficient because scienter on the corporation's part can be satisfied based on the collective knowledge and intent of the organization, including the knowledge of managers of its Brazilian operations regarding the overstated sales and income. Plaintiffs contend Baxter's scienter can be adequately alleged even if scienter is not adequately alleged as to any of the individual defendants. Plaintiffs' contention is contrary to holdings of at least two Circuit Courts, Southland, 365 F.3d at

366-67 (5th Cir.); <u>Nordstrom, Inc. v. Chubb & Son, Inc.</u>, 54 F.3d
1424, 1435-36 (9th Cir. 1995), and the Seventh Circuit has
expressed agreement with such holdings, <u>see</u> <u>Caterpillar, Inc. v.</u>
<u>Great American Insurance Co.</u>, 62 F.3d 955, 963 (7th Cir. 1995)
(discussing <u>Nordstrom</u>). <u>See also</u> <u>Kinsey v. Cendant Corp.</u>, 2004
WL 2591946 *13 (S.D.N.Y. Nov. 16, 2004); <u>In re Tyson Foods, Inc.</u>,
2004 WL 1396269 *12 (D. Del. June 17, 2004); <u>In re Cable &</u>
<u>Wireless, PLC</u>, 321 F. Supp. 2d 749, 772 (E.D. Va. 2004); <u>Piper</u>
<u>Jaffray Cos. v. National Union Fire Insurance Co. of Pittsburgh</u>,
38 F. Supp. 2d 771, 779-80 (D. Minn. 1999). These cases hold
that the requisite scienter must be held by the corporate
employee responsible for issuing the alleged misrepresentations
or at least that a senior officer or director of the corporation
must have the pertinent scienter. Here, the alleged
misrepresentations were made by Anderson and Kraemer. As
previously discussed, plaintiffs have not adequately alleged that
these defendants had the requisite scienter. Neither have
plaintiffs adequately alleged that any other senior officer of
Baxter itself had the requisite scienter.

Plaintiffs cite two cases in support of their contention
that they have adequately alleged Baxter's collective scienter.
One case is readily distinguishable. In <u>In re NUI Securities</u>
<u>Litigation</u>, 314 F. Supp. 2d 388, 410-13 (D.N.J. 2004), the court
found that there were two bases for finding scienter on the part

of the corporation itself even though allegations as to the
individual defendants were deficient.  See id. at 413-14 & n.18.
First, there were adequate allegations linking the alleged
misrepresentations to an NUI stock offering that was intended to
reduce short term debt.  That is unlike the situation in the
present case where, as previously discussed, plaintiffs have
failed to provide adequate allegations linking alleged Baxter
transactions with the alleged misrepresentations.  Second, there
were allegations that NUI's assistant general counsel received
letters informing her of the improper bad debt practices that
were being followed.  Although the assistant general counsel was
not named as an individual defendant, she was deemed to be a
senior management official whose knowledge could be attributed to
NUI.  That is unlike the present case where the only Baxter
employees adequately alleged to have knowledge of the improper
practices were managers of Baxter's Brazilian operations, not
upper level management officials of Baxter itself.

        Plaintiffs also cite In re WorldCom, Inc. Securities
Litigation, 352 F. Supp. 2d 472, 497 (S.D.N.Y. 2005).  That
holding concerns the § 10(b) liability of an accounting firm for
recklessly issuing audit opinions in support of WorldCom's false
disclosures.  In part, the holding relies on the nature of an
accounting firm and it having collective responsibility for the
results of an audit that was conducted by numerous employees.

See id. at 497 ("case law abounds with discussions of securities fraud by accounting firms that concentrate on the firm's collective state of mind, not that of individual partners or employees"). The case, however, also states that it is generally appropriate to look to the collective knowledge and intent of a corporate securities fraud defendant.

> To carry their burden of showing that a corporate defendant acted with scienter, plaintiffs in securities fraud cases need not prove that any one individual employee of a corporate defendant also acted with scienter. Proof of a corporation's collective knowledge and intent is sufficient. . . . "[c]orporations compartmentalize knowledge, subdividing the elements of specific duties and operations into smaller components. The aggregate of those components constitutes the corporation's knowledge of a particular operation."

WorldCom, 352 F. Supp. 2d at 497 (quoting United States v. Bank of New England, N.A., 821 F.2d 844, 856 (1st Cir.), cert. denied, 484 U.S. 943 (1987)[7]).

To the extent this holding of WorldCom is not limited to accounting firms, this court declines to follow WorldCom and instead will follow the majority rule previously discussed. Plaintiffs have not adequately alleged scienter on the part of Anderson and Kraemer, who issued the alleged misrepresentations.

---

[7]Bank of New England is not a securities fraud case. It concerns the Bank's criminal liability for violations of the Currency Transaction Reporting Act, 31 U.S.C. §§ 5311-22. New England, 821 F.3d at 847.

Neither have plaintiffs adequately alleged scienter on the part of any other Baxter senior management official. The § 10(b) claim against Baxter will be dismissed.

Since the allegations do not adequately support that Baxter violated § 10(b), the control person claims against the individual defendants must also be dismissed. Southland, 365 F.3d at 383-84; Taubenfeld v. Career Education Corp., 2005 WL 350339 *13 (N.D. Ill. Feb. 11, 2005).

It has been found that the CAC fails to adequately allege a basis for relief. In that circumstance, plaintiffs request that the CAC be dismissed without prejudice and that they be provided the opportunity to amend. Defendants oppose that request. The case will be dismissed and a judgment will be entered. That does not necessarily deprive plaintiffs of the opportunity to amend. However, to the extent they desire to amend, they must move within the time provided under Fed. R. Civ. P. 59(e). Any such motion must include the proposed amended complaint. See Crestview Village Apartments v. United States Department of Housing & Urban Development, 383 F.3d 552, 557-58 (7th Cir. 2004).

IT IS THEREFORE ORDERED that:

(a) In No. 04 C 7096, the motion to remand (misfiled in No. 04 C 4909 as Motion [21]) is granted. The Clerk of the Court

is directed to remand No. 04 C 7096 to the Circuit Court of Cook County, Illinois.

(b) In No. 04 C 4909, defendants' motion to dismiss [26] is granted. Class certification is denied without prejudice. The Clerk of the Court is directed to enter judgment in favor of defendants and against plaintiffs dismissing plaintiffs' cause of action with prejudice.

ENTER:

William T. Hart

UNITED STATES DISTRICT JUDGE

DATED: MAY 25 , 2005