IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **DENNIS HIGGINBOTHAM,** | : | |
| individually and on behalf of all others | : | **CIVIL ACTION NO. 04 C 4909** |
| similarly situated, | : | |
| | : | |
| Plaintiff, | : | |
| | : | **Hon. William T. Hart** |
| v. | : | |
| | : | |
| **BAXTER INTERNATIONAL, INC.**, | : | |
| **HARRY M. JANSEN KRAEMER, JR.**, | : | |
| **BRIAN P. ANDERSON**, and | : | |
| **JOHN GREISCH**, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION
OF THE COURT'S MEMORANDUM OPINION AND ORDER
<u>DATED SEPTEMBER 23, 2005</u>**

| | |
|---|---|
| **POMERANTZ HAUDEK BLOCK** | **BERGER & MONTAGUE, P.C.** |
| **GROSSMAN & GROSS, LLP** | Sherrie R. Savett |
| Patrick V. Dahlstrom | Arthur Stock |
| Leigh H. Smollar | Douglas M. Risen |
| One North LaSalle Street, Suite 2225 | 1622 Locust Street |
| Chicago, IL 60602-3908 | Philadelphia, PA 19103 |
| (312) 377-1181 | (215) 875-3000 |
| (312) 377-1184 (Fax) | (215) 875-4636 (fax) |
| | |
| **Liaison Counsel for the Class** | **Co-Lead Counsel for the Class** |

**TABLE OF CONTENTS**

I. Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. The Court Properly Exercised Its Discretion
In Granting Plaintiff Leave To Amend . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. Defendants Are Not Entitled To A Reconsideration
Of This Court's Reconsideration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV. The Second Complaint
Properly Pleads a Cause of Action Against Each Defendant . . . . . . . . . . . . . . . . 3

    A. The Complaint Alleges Specific Facts
       That Give Rise To A Strong Inference
       That Each Defendant Acted With Scienter . . . . . . . . . . . . . . . . . . . . . . . . 3

        1. Defendant Parkinson . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        2. Defendant Anderson . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        3. Defendant Greisch . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        4. Defendant Del Salto . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        5. The Corporate Liability Of Baxter International . . . . . . . . . . . . . 9

    B. The Complaint Properly Pleads
       Control Person Liability Of Each Defendant . . . . . . . . . . . . . . . . . . . . . 12

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Plaintiff, Steelworkers Pension Trust, oppose reconsideration of the Court's September 23, 2005 Order permitting this action to go forward. The Court has already rejected all of Defendants' arguments, and they offer no valid basis for reconsideration.

I.      **Procedural History**

This action was initially filed after Baxter International, Inc. ("Baxter") announced that its financial statements for 2002, 2003, and the first quarter of 2004 overstated the Company's income, due to a massive fraud in its Brazilian operations. At the same time, Baxter announced that contrary to its previous statements, its internal financial control system suffered from material weaknesses, and that some of these weaknesses had been brought to the attention of senior management in early 2004.

Plaintiff Steelworkers Pension Trust was appointed co-lead plaintiff, and filed a Consolidated Amended Class Action Complaint on January 10, 2005. The Court dismissed the action by Order of May 25, 2005, ruling that Plaintiffs had not pleaded defendants' scienter with sufficient specificity, and invited Plaintiffs to seek leave to amend by having the judgment set aside pursuant to Fed. R. Civ. P. 59(e), May 25 Op. at 24.

Steelworkers sought leave to file a Second Amended Class Action Complaint (the "Second Complaint") alleging a much shorter Class Period, beginning with the publication of Baxter's annual report on Form 10-K for 2003, the same time period when the fraudulent activity in Brazil was allegedly brought to the attention of Baxter's senior management in the United States. The Second Complaint also included additional specific allegations based upon two newly available confidential witnesses, named two new individual defendants, and included greater specificity in allegations of insider trading by the defendants.

Defendants opposed amendment, asserting, inter alia, that the Second Complaint again did

not plead scienter with sufficient specificity, and that two Defendants who did not publish statements during the Class Period could not be liable for securities fraud. The Court rejected Defendants' claims by Opinion of September 23, 2005, explicitly finding that the Complaint was properly pleaded, and scienter adequately alleged for all defendants. Op. at 7-8. In the instant motion Defendants seek reconsideration of the Court's September 23, 2005 Order, although they have identified no material legal or factual errors.

## II.   The Court Properly Exercised Its Discretion In Granting Plaintiff Leave To Amend

The Court's finding that Plaintiff should be permitted to file the Second Complaint was within the Court's discretion, September 23 Op. at 3, and should not be reconsidered. As Plaintiff noted in prior briefing, a Rule 59(e) Motion may be granted where the Plaintiff presents newly discovered evidence. Newly discovered evidence from two new confidential witnesses formed the basis for many of the specific allegations in the Second Amended Complaint. See ¶ 8, 63(g), 103-110. The Court relied on this evidence in finding that amendment was not futile. September 23, 2005 Op. at 6-7. Accordingly, reopening the judgment was entirely proper. Matter of Prince, 85 F.3d 314, 324 (7th Cir. 1996); Cosgrove v. Bartolotta, 150 F.3d 729, 732 (7th Cir. 1998). The issue has been considered and reconsidered. Further reconsideration must be denied.

## III.   Defendants Are Not Entitled To A Reconsideration Of This Court's Reconsideration

Defendants' claim that they had not adequately raised the issue of scienter pleading in prior briefing is disingenuous at best. In fact, about half of their argument was devoted to arguing that the Second Complaint did not plead scienter with adequate specificity. July 6, 2005 Mem. at 6-10, 12-15. Defense Counsel also specifically addressed the claim against each of the four individual defendants, including those who had not formally been served. The Court explicitly rejected

2

Defendants' arguments, reviewing the allegations of scienter, and finding them adequate, and also finding the allegations of Del Salto's and Greisch's involvement to be legally sufficient. Op. at 7-8. The Defendants have had their kick at the cat, and should not be permitted another.

### IV.     The Second Complaint Properly Pleads a Cause of Action Against Each Defendant

Defendants concede that the Second Complaint pleads all necessary elements of a claim, and dispute only the relative strength of the inferences that can be drawn from the factual pleading respecting defendants' states of mind.

#### A.     The Complaint Alleges Specific Facts That Give Rise To A Strong Inference That Each Defendant Acted With Scienter

Most courts in this circuit have adopted the standard enunciated by the Second Circuit. Ong v. Sears, Roebuck & Co., 2004 U.S. Dist. LEXIS 19425, at *86-87 (N.D. Ill. Sept. 24, 2004) (citations omitted).

> [U]nder this case, law, **a complaint adequately pleads scienter either '(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'**

Gilford Partners, L.P. v. Sensormatic Elecs. Corp., 1997 U.S. Dist. LEXIS 19032, at *61-62 (N.D. Ill. Nov. 12, 1997) (Manning, J.) (emphasis added) (quoting Shields v. Citytrust Bancorp., 25 F.3d 1124, 1128 (2d Cir. 1994)).[1]

"To establish scienter, [ ] Plaintiff must plead facts establishing that Defendants acted with

---

[1]     See also In re Sears, Roebuck & Co. Sec. Litig., 291 F. Supp. 2d 722, 726 (N.D. Ill. 2003) (Bucklo, J.) (applying the Second Circuit's formulation); In re System Software Assocs. Sec. Litig., No. 97-C-177, 2000 U.S. Dist. LEXIS 3071, at *13 (N.D. Ill. Mar. 8, 2000) (Pallmeyer, J.) (same); Scott v. Steingold, 1998 U.S. Dist. LEXIS 15810, at *20-21 (N.D. Ill. Sept. 30, 1998) (Manning, J.) (same); Miller v. Material Sciences Corp., 9 F. Supp. 2d 925, 927 (N.D. Ill. 1998) (Gettleman, J.) (same).

3

intent to deceive or manipulate. Reckless disregard of the truth is sufficient to establish intent for this purpose." In re Motorola Sec. Litig., 2004 U.S. Dist. LEXIS 18250, at *88 (N.D. Ill. Sept. 9, 2004) (citing SEC v. Jakubowski, 150 F.3d 675, 681 (7th Cir. 1998)). See also Fugman v. Aprogenex, 961 F. Supp. 1190, 1195 (N.D. Ill. 1997) (noting that plaintiffs must allege facts sufficient to create a "strong inference" that defendants "made the specified statements either knowing their falsity or with recklessness regarding their falsity").

In assessing scienter, Plaintiffs' allegations must be viewed in their totality. See Florida State Bd. of Admin. v. Green Tree Fin. Corp., 270 F.3d 645, 660 (8th Cir. 2001) (securities fraud claim properly stated if allegations "collectively add up to a strong inference of the required state of mind").[2]

As set forth below, a careful review of the allegations of the Complaint with regard to each defendant demonstrates that the Second Complaint pleads scienter with adequate specificity. Defendants' motion for reconsideration must be denied.

Defendants' assertion that the Complaint must be dismissed because Plaintiffs present only a "plausible", not a "most plausible" inference of scienter, Br. at 7, makes little sense in light of the specificity of the claims. In any event, it is not grounds for reconsidering the Court's Order that Defendants answer the Complaint, as the determination of whether circumstantial evidence supports a finding as to Defendants' states of mind should be made by a jury after hearing witnesses testify, not by a Court on a minimal record. Plaintiffs address the allegations against each Defendant in

---

[2] See also Barrie v. Intervoice-Brite, Inc., 397 F.3d 249, 263-64 (5th Cir. 2005); Adams v. Kinder-Morgan, Inc., 340 F.3d 1083, 1092 (10th Cir. 2003) ("district court must evaluate 'the totality of the pleadings'"); Aldridge v. A.T. Cross Corp., 284 F.3d 72, 82 (1st Cir. 2002); In re Scientific Atlanta, Inc. Sec. Litig., 239 F. Supp. 2d 1351, 1362-63 (N.D. Ga. 2002), aff'd, 374 F.3d 1015 (11th Cir. 2004) (viewed in their totality, allegations supported strong inference of scienter).

4

turn.

### 1. Defendant Parkinson

Defendant Parkinson became Chairman of the Board of Directors, Chief Executive Officer, and President of Baxter on April 26, 2004. In that capacity, he signed the Company's first quarter Form 10-Q and Sarbanes-Oxley certification, which stated that he had designed disclosure controls and procedures (or supervised the design), evaluated the effectiveness of such controls and procedures; and disclosed any shortcomings in the procedures and the Company's internal controls. ¶ 83. This statement was false with respect to Brazil, as there had been no implementation of Sarbanes-Oxley procedures there ¶ 63(f), (g). As Parkinson himself was the speaker, he was either knowledgeable that his statement was false, or was reckless in making a statement based on his personal knowledge without determining whether it was true or false. No other strong inference is possible. Either leaves Parkinson liable for securities fraud.

The evidence supporting a strong inference of scienter for Defendant Parkinson is substantial. Initially, Parkinson himself <u>stated in the Sarbanes-Oxley certification he signed that he was knowledgeable</u> both of the company's financial statements, and of the company's disclosure controls and procedures. He further stated that he had personally conducted "our most recent evaluation of internal control over financial reporting," and he disclosed to the audit committee "all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting" and also disclosed "any fraud, whether or not material, that involves management or other employees who have a significant role is the registrant's internal control over financial reporting." ¶¶ 83, 110. Thus, Parkinson himself claimed to be knowledgeable about all of the issues material to the alleged fraud in Brazil.

5

Beyond that, Parkinson also admitted in a conference call with stock analysts that he learned of the Brazilian fraud "in the May time frame" - the same time frame where he signed the Sarbanes-Oxley certification. ¶ 102. The Court drew an appropriate inference from Parkinson's statements on the conference call: Parkinson said that he had discussed corporate cash flow with the Board of Directors at a May 4 meeting, and found no reason to address the issue again. ¶ 81. Since the fraud in Brazil affected corporate cash flow, and Parkinson also stated that he learned of the fraud in Brazil in the same time frame, the Court's inference that the initial news of fraud in Brazil was reported at the May 4 Board meeting is clearly reasonable.

### 2. **Defendant Anderson**

Defendant Anderson was Baxter's Chief Financial Officer from February 1998 until June 21, 2004. Like Anderson, he signed Sarbanes-Oxley certifications stating that he was knowledgeable of Baxter's financial reporting and its financial controls for both year-end 2003 and the first quarter of 2004. ¶¶ 63, 83. Thus, the best evidence of Anderson's state of mind, like Parkinson's, is his own words. In addition, one confidential witness who was retained by Baxter as a consultant on financial controls, ¶ 39, asserted that Anderson had been informed of the fictitious contracts in Brazil by May 2004. ¶ 46.

Evidence of personal stock sales buttresses the allegations of scienter. On April 26, 2004, Anderson sold over $1.4 million of Baxter common stock, very close in time to the dates of Del Salto's stock sales. ¶ 78. He had not, in previous years, sold any Baxter common stock. Numerous courts have held that substantial sales of stock, when outside of any pattern of sales, can give rise to a strong inference that defendants acted with scienter. Searls v. Glasser, 64 F.3d 1061, 1068 (7th

Cir. 1995); Chu v. Sabratek Corp., 100 F. Supp. 2d 827, 841 (N.D. Ill. 2000).[3]

Anderson's filing of a Form 144 in March, 2004, six weeks before his sale of stock, announcing his intention to sell his shares at a specified future date, does not negate the natural inference of scienter. Rather, it leads to two alternative inferences both of which require denying reconsideration: either Anderson had been aware of the improper accounting in Brazil (which had been ongoing for years) prior to his filing of the Form 144; or Anderson's intention to sell his shares provided a critical motivation to suppress release of adverse corporate news past the planned time of the stock sale. Indeed, defense counsel's speculation that Anderson may have sold his stock because he anticipated an involuntary retirement (Br. at 15) leaves open a strong inference that he was also motivated to suppress adverse information to maximize the value of his retirement nest egg. See Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994) (stating that defendant's "implication that [he sold his shares because] he wanted to retire can even be read to support a finding of his scienter"); Goldman v. Belden, 754 F.2d 1059, 1071 (2d Cir. 1985) (finding that if defendant's claimed "motivation in selling his stock was to fund retirement activities, plaintiff would doubtless argue that the desire to sell the stock to fund retirement was an incentive for [the defendant] to cause the making of inflationary statements. Such an implication would give substance to the contention that the alleged misrepresentations and omissions were deliberate."). Similarly, knowledge that options would soon expire could motivate both a stock sale and a suppression of negative Company news.

---

[3] Defendants' claim that Anderson's sale is not suspicious because it came after the report of first quarter earnings is illogical. First quarters earnings were overstated due to the Brazilian fraud, and subsequently revised downward, so that stock sale was timed perfectly to profit from the alleged fraud.

### 3. Defendant Greisch

Defendant Greisch was Corporate Vice President of Baxter World Trade from the beginning of the Class Period through June 21, 2004, when he was promoted to Chief Financial Officer. He was directly responsible for worldwide operations at the beginning of the Class Period, and received monthly financial reports from Brazil, ¶ 39. One confidential witness has stated that Greisch had been informed of fictitious contracts in Brazil on a regular basis, beginning in 2003 or earlier. ¶¶ 45-46. The strong inference that he had reason to be knowledgeable of the absence of adequate financial controls, improper reporting of revenue, and/or fictitious contracts in Brazil is inescapable.

Plaintiffs seek to hold him in the case because of his actual involvement in the fraudulent reporting, not on the basis of an evanescent "group pleading theory." Contrary to Defendants' brief, the Complaint clearly alleges that Greisch was responsible for financial reporting from Brazil. ¶¶ 100, 103. There is no requirement under either statute or case law that a responsible corporate officer speak to the public to be liable for participation in securities fraud. See 17 C.F.R. § 240.10b-5(c) (unlawful "to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit"); see also Op. at 8.[4]

### 4. Defendant Del Salto

Defendants simply ignore the most salient new allegation against Mr. Del Salto: that he was a member of Baxter's executive management team, and the manager of a geographical region of Baxter that included Brazil. ¶¶ 18, 100. Del Salto's responsibility over the relevant geographic sector, in conjunction with his extraordinarily large and suspiciously timed stock sales, gives rise

---

[4] Defendants assert that allegations of Greisch's scienter are based solely on "group pleading." Br. at 17-18. This simply is not the case. Greisch's responsibility for worldwide operations is personal to him, and he was specifically named as the individual at headquarters not knowledgeable of false contracts in Brazil by a confidential witness. ¶¶ 45-46.

8

to a strong inference that he was an active and knowledgeable participant in the securities fraud.[5] There can be no question that Del Salto's stock sales, of over $4.4 million of stock, were suspicious in both time and amount. The sale occurred shortly after the publication of overstated revenue for the first quarter of 2004, and Del Salto had had no sales of stock in prior years.[6]

### 5. The Corporate Liability Of Baxter International

Defendants barely address the pleading of Baxter's corporate <u>scienter</u>, even though it is largely independent of the <u>scienter</u> allegations against individual defendants. The Court's finding that the Complaint adequately alleges Baxter's <u>scienter</u> should not be reconsidered.

Scienter of a corporation can be shown through the collective knowledge of its employees. "It is undisputed that business entities can be primarily liable for a violation of Section 10(b)." <u>In re Worldcom, Inc. Sec. Litig.</u>, 2005 U.S. Dist. LEXIS 710, *67 (S.D.N.Y. Jan. 18, 2005). A plaintiff can prove scienter by demonstrating that "a large entity, firm, institution, or corporation is acting in a manner that easily can be foreseen to result in harm." <u>AUSA Life Ins. Co. v. Ernst and Young</u>, 206 F.3d 202, 221 (2d Cir. 2000) (finding Section 10(b) claim adequately pleaded against auditing firm). As the <u>Worldcom</u> Court noted:

> To carry their burden of showing that a corporate defendant acted

---

[5] As with Greisch, Defendants' claim that plaintiff seeks to use a "group pleading doctrine" to demonstrate Del Salto's <u>scienter</u> is baseless. Both Del Salto's responsibilities in Baxter's executive management group, and his stock sales, are personal to him, and have nothing to do with any "group pleading".

[6] Defendants also claim that Del Salto's stock sales in later 2004 and in 2005 somehow make his sales shortly before the fraud was uncovered less suspicious. Br. at 19. This claim has no legal or logical basis. The claim is especially odd in light of the fact that the sales came after Baxter had been named as a defendant in this action, and Del Salto's sales had been cited as evidence of <u>scienter</u>. Plainly, it would be absurd to permit a defendant to gain dismissal from a lawsuit on the basis of his own actions taken after he was named in the case. Cf. Fed. R. Evid. 407 (evidence of subsequent remedial measures generally inadmissible).

> with scienter, plaintiffs in securities fraud cases need not prove that any one individual employee of a corporate defendant also acted with scienter. Proof of a corporation's collective knowledge and intent is sufficient.[7]

Id. at *67-*68. Similarly, in United States v. Bank of New England, N.A., 821 F.2d 844, 856 (1st Cir. 1987), the court found that "corporations compartmentalize knowledge, subdividing the elements of specific duties and operations into smaller components. The aggregate of those components constitutes the corporation's knowledge of a particular operation." (Citations omitted).

A corporation is liable for the intentional acts of its agents acting within the scope of their apparent authority. Shapo v. O'Shaughnessy, 246 F. Supp.2d 935, 969 (N.D. Ill. 2002).[8] Primary liability for participation in a scheme extends to parent corporations such as Baxter, "[w]here factual allegations are sufficient to make a claim for participation of a subsidiary in the fraudulent scheme, a corporate parent may be liable." In re American Bank Note Holographics, Inc. Sec. Litig., 93 F. Supp.2d 424, 444 (S.D.N.Y. 2000).[9]

---

[7] Traditional notions of respondeat superior liability support this contention. See In re Centennial Technologies Litig., 52 F.Supp. 2d 178, 185 (D. Mass. 1999)("The language of Section 10(b), although not explicitly saying so, implies that entities may be held liable under agency principles. Therefore, if agency principles were not meant to be a viable basis for liability under Section 10(b), the text of Section 10(b) would need to be modified to declare, in effect if not precisely in these words, that it is unlawful for natural persons to engage in the prohibited conduct. That is not, however, what Section 10(b) provides. Section 10(b) provides for liability for any 'person,' which encompasses, by definition, 'a natural person, company, government, or political subdivision, agency, or instrumentality of a government.' 15 U.S.C. § 78c(a)(9) (emphasis added). Therefore, by necessity, Section 10(b) contemplates liability based upon agency principles.").

[8] See Guaranty Residential Lending, Inc. v. Int'l. Mortgage Center, Inc., 305 F. Supp. 2d 846, 862 (N.D. Ill. 2004) "Apparent authority must derive from acts of the principal. . . . The inquiry focuses on three factors: (1) the manifestation to the third party by the principal; (2) the reasonableness of the third party's belief that authority extended to the act of the agent; and (3) the third party's detrimental reliance on the apparent authority." (citations omitted).

[9] American Holographics upheld primary liability for a parent corporation for false statements in a subsidiary's IPO, even where the parent corporation did not make any of the false statements at issue. Id. Plaintiffs in the instant litigation are in a stronger position because Baxter itself made the false statements

Defendant Baxter, in the case at bar, is liable for the acts of its Brazilian operations, because knowledge of the Brazilian management is imputed to it. Brazilian management was involved in the kickback scheme. ¶ 37. The Complaint alleges that several Baxter employees were fired for this scheme, following a Company internal audit preliminary investigation. ¶ 52. Many members of top Brazilian management were alleged to be involved in this scheme. ¶ 53. The Brazilian Operation's financial accounting was performed under the direction of the Finance Director, Robert Vlasak, who had authority to make such decisions. ¶ 38. The financials were sent on a monthly basis to senior Baxter Management, including defendant Greisch. ¶ 39. It would be unfair for Baxter, which allowed its Brazilian management to invoke the authority to input financials, to place the burden on the investing public to bear the loss due to its own officers' fraud.

Plaintiffs further allege that Senior management for the Brazilian operations, including Vlasak, Prestinoni and Sanchez, cooked the books by booking fictitious sales, which were the primary need for the restatement. ¶ 42. Moreover, these fictitious sales were brought to the attention of defendant Greisch *on a regular basis*, and to defendant Andersen *as early as* May, 2004. ¶ 43. The collective knowledge of all of these employees together demonstrates the scienter of Baxter, as a corporate entity. See, e.g. In re Worldcom, 2005 U.S. Dist. LEXIS 710, at *67-*68.

In addition, in April, 2004, an administrative proceeding was initiated against Baxter for an alleged cartel practice in bidding processes. ¶ 45. In May, 2004, investigations against Baxter were launched by the Brazilian Federal Police, during which Baxter employees were arrested under Brazilian law. ¶¶ 46-47, 51. For Baxter now to claim that it had no knowledge of these operations is incredible, especially after several federal investigations were launched in Brazil for these

---

at issue in its own press releases and SEC filings.

fraudulent activities.

Plaintiffs here need not allege that any single employee acted with scienter; rather, Plaintiffs need only plead that Baxter had collective knowledge and intent to commit the fraud complained of herein, which Plaintiffs have clearly done. Baxter's Brazilian officers were Baxter's agents, and Baxter is liable for their collective acts. See Shapo, 246 F. Supp.2d at 969. Contrary to Defendants' attempt to compartmentalize the knowledge of very specific officers, the collective knowledge of all of Baxter's employees is imputed to the Company. The aggregate of Baxter's employees' knowledge constitutes Baxter's knowledge of its operations, and the scienter element of fraud alleged herein. See United States v. Bank of New England, 821 F.2d at 856. Hence, Plaintiffs have properly pleaded scienter with respect to Baxter, as a corporate entity.

### B. The Complaint Properly Pleads Control Person Liability Of Each Defendant

As demonstrated above, Plaintiffs have stated actionable claims against Baxter as a primary violator of § 10(b) and Rule 10b-5. Because the allegations against the controlled person (i.e., Baxter) are sufficient, and because the Individual Defendants are alleged to be "controlling persons," liability under § 20(a) of the Exchange Act should be sustained. Courts have consistently found allegations of control person liability sufficient to withstand a motion to dismiss under circumstances similar to this case.[10]

Indeed, Defendants do not dispute their status as control persons of Baxter, instead arguing only a failure to plead an underlying primary violation. See In re Neopharm, Inc., Sec. Litig., 2003 U.S. Dist. LEXIS 1862, at *47 (N.D. Ill. Feb. 7, 2003) ("Defendants only argue that [control person]

---

[10] See In re First Merchants Acceptance Corporation Sec. Litig., 1998 U.S. Dist. LEXIS 17760 (N.D. Ill., Nov. 2, 1998); In re F&M Distributors, Inc. Securities Litigation, 937 F. Supp. 647 (E.D. Mich. 1996); In re Prison Realty Sec. Litig., 2000 U.S. Dist. LEXIS 12575 (M.D. Tenn. Feb. 16, 2000); In re U.S.A. Classic Sec. Litig., 1995 U.S. Dist. LEXIS 8327 (S.D.N.Y. June 16, 1995).

liability is inappropriate because plaintiff has failed to adequately plead the underlying § 10(b) claims. Since the court finds the underlying § 10(b) claims adequately pled, the court does not agree that the [control person] claims should also be dismissed.").

Moreover, there are numerous allegations which demonstrate that the Individual Defendants controlled Baxter and/or each other and are therefore liable under Section 20(a). See, e.g., ¶¶ 20, 21, 22, 23, 24, 44, 124, 126, 127, 140, 147, 148.

In analyzing Section 20(a), the Seventh Circuit has stated: "We have long viewed the statute as remedial, to be <u>construed</u> <u>liberally</u>, and requiring only some <u>indirect</u> means of discipline or influence short of actual direction to hold a control person liable." <u>Harrison v. Dean Witter Reynolds, Inc.</u>, 974 F.2d 873, 880 (7th Cir. 1992) (emphasis added) (quoting <u>SEC v. First Securities Co. of Chicago</u>, 463 F.2d 981, 987 (7th Cir. 1972).

It is in this context that the Seventh Circuit in <u>Harrison</u> set forth the following test:

> We have looked to whether the alleged controlperson actually participated in, that is, exercised control over, the operations of the person <u>in</u> <u>general</u> and, then, to whether the alleged controlperson possessed the power or ability to control the specific transaction or activity upon which the primary violation was predicated, **whether or not that power was exercised**.

<u>Id.</u>, at 881 (emphasis added).

Thus, based on the above, it is clear that Plaintiffs have sufficiently alleged that the Individual Defendants were in a control position.

## **CONCLUSION**

This Court has already sustained the Second Complaint, and ruled that all Defendants must file answers. Nothing in Defendants' Motion justifies reversing that judgment. Reconsideration is improper, and must be denied.

13

Dated: October 26, 2005

Respectfully submitted,

　s/ Leigh Handelman
**POMERANTZ HAUDEK BLOCK
　GROSSMAN & GROSS, LLP**
Patrick V. Dahlstrom
Leigh Handelman Smollar
One North LaSalle Street, Suite 2225
Chicago, IL 60602-3908
(312) 377-1181
(312) 377-1184 (Fax)
*Liaison Counsel for the Class*

**BERGER & MONTAGUE, P.C.**
Sherrie R. Savett
Arthur Stock
Douglas M. Risen
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000
(215) 875-4636 (Fax)

**GLANCY BINKOW & GOLDBERG LLP**
Lionel Z. Glancy
Peter A. Binkow
Avi Wagner
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067
(310) 201-9150
(310) 201-9160 (Fax)
*Co-Lead Counsel for the Class*